IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORA NOVAKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-356E |
| | ) | |
| ELAINE CHAO, SECRETARY, | ) | JUDGE McLAUGHLIN |
| AND THE UNITED STATES | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND SET OF
INTERROGATORIES AND SECOND REQUEST
FOR PRODUCTION OF DOCUMENTS**

AND NOW, comes the Defendants, Elaine Chao, Secretary, and the United States Department of Labor, by their attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Paul E. Skirtich, Assistant United States Attorney for said District, and respectfully responds to Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents as follows:

**I.   GENERAL OBJECTIONS**

1.      Defendants object to the "Definitions and Instructions" section of Plaintiff's second set of Interrogatories and Production of Documents to the extent that it purports to require Defendants to undertake any obligation beyond those imposed by the Federal Rules of Civil Procedure or other rules applicable to this action.

EXHIBIT D

2. Defendants object to Plaintiff's second set of Interrogatories and Production of Documents to the extent that the Request for Production of Documents purports to elicit information beyond the scope of the Complaint filed in this action. Defendants further object to Plaintiff's second set of Production of Documents to the extent that the Request for Production of Documents purports to elicit information which is neither relevant to any issue in such action, nor calculated to lead to the discovery of admissible evidence.

3. Defendants' investigation into the facts and discovery is continuing in nature. Accordingly, with respect to the responses and objections made herein, Defendants expressly reserve the right to supplement any such response or objection. Each of the specific responses and objections below is expressly made subject to the foregoing general objections.

## II. ANSWERS TO INTERROGATORIES

1. Please state whether any investigation of the Erie, Pennsylvania, office of OSHA has been conducted by the Office of Inspector General of the U.S. Department of Labor during the period January 2001 to present.

**Answer:** OBJECTION, based on the following grounds: (1) this Interrogatory seeks information not relevant to the non-selection at issue in this matter, information of an internal investigation into the affairs of a co-employee who was not involved in any way with the non-selection of Plaintiff and/or Plaintiff's admissions that the co-employee's activities did not affect Plaintiff's ability to do her duties (see copies of Deposition of Debora Chiz Novakowski, April 22, 2003, pp. 45-50; and copies of EEO hearing testimony, May 20, 2003, pp. 63-66, attached hereto); and (2) the Privacy Act prevents release of the information since any

findings would be retrievable by the name of the co-employee, not the Plaintiff.

Without waiving said objections and pursuant to F.R.C.P. 33(b), there was an investigation.

2. If the answer to Interrogatory No. 1 is yes, please state the purpose of the investigation.

**Answer:** OBJECTION, based on the following grounds: (1) this Interrogatory seeks information not relevant to the non-selection at issue in this matter, information of an internal investigation into the affairs of a co-employee who was not involved in any way with the non-selection of Plaintiff and/or Plaintiff's admissions that the co-employee's activities did not affect Plaintiff's ability to do her duties (see copies of Deposition of Debora Chiz Novakowski, April 22, 2003, pp. 45-50; and copies of EEO hearing testimony, May 20, 2003, pp. 63-66, attached hereto); and (2) the Privacy Act prevents release of the information since any findings would be retrievable by the name of the co-employee, not the Plaintiff.

Without waiving said objections and pursuant to F.R.C.P. 33(b), the investigation focused on the illegal and/or improper use of a government computer by a co-employee of Plaintiff's to access pornographic material.

3. If the answer to Interrogatory No. 1 is yes, please state the complete findings of the investigation.

**Answer:** OBJECTION, based on the following grounds: (1) this Interrogatory seeks information not relevant to the non-selection at issue in this matter, information of an internal investigation into the affairs of a co-employee who was not involved in any way with the non-selection of Plaintiff and/or Plaintiff's admissions that the co-employee's activities did not affect Plaintiff's ability to do her duties (see copies of Deposition of Debora Chiz Novakowski, April 22, 2003, pp. 45-50; and copies of EEO hearing testimony, May 20, 2003, pp. 63-66, attached hereto); and (2) the Privacy Act prevents release of the information since any findings would be retrievable by the name of the co-employee, not the Plaintiff.

4.  If the answer to Interrogatory No. 1 is yes, please state the name, address, and telephone number of any and all persons who conducted the investigation.

**Answer:** OBJECTION, based on the following grounds: (1) this Interrogatory seeks information not relevant to the non-selection at issue in this matter, information of an internal investigation into the affairs of a co-employee who was not involved in any way with the non-selection of Plaintiff and/or Plaintiff's admissions that the co-employee's activities did not affect Plaintiff's ability to do her duties (see copies of Deposition of Debora Chiz Novakowski, April 22, 2003, pp. 45-50; and copies of EEO hearing testimony, May 20, 2003, pp. 63-66, attached hereto); and (2) the Privacy Act prevents release of the information since any findings would be retrievable by the name of the co-employee, not the Plaintiff.

Without waiving said objections and pursuant to F.R.C.P. 33(b), the investigators were Office of Inspector General Special Agents Steve Wilburn and Tracy L. Hapeman, Room 408, 1000 Liberty Avenue, Pittsburgh, PA 15222.

   III.  **RESPONSES TO SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

1.  Please produce any and all documents which are in any way related to or resulting from any investigation of the Erie, Pennsylvania, office of OSHA conducted by the Office of Inspector General of the United States Department of Labor referred to in Interrogatory No. 1.

**Response:** OBJECTION, based on the following grounds: (1) this request is for information not relevant to the non-selection at issue in this matter, information of an internal investigation into the affairs of a co-employee who was not involved in any way with the non-selection of Plaintiff and/or Plaintiff's admissions that the co-employee's activities did not affect Plaintiff's ability to do her duties (see copies of Deposition of Debora Chiz Novakowski, April 22, 2003, pp. 45-50; and copies of EEO hearing testimony, May 20, 2003, pp. 63-66, attached hereto); (2) the Privacy Act prevents release of the information since any findings would be retrievable by the name of the co-employee, not the Plaintiff; and, (3) to the extent any additional documents exist, they are not available to the Department of Labor. The Office of the Inspector General for the Department of Labor (OIG) is an independent entity within the Department of Labor. The OIG conducts investigations and audits of Department of Labor

4

programs, operations, and employees.  The OIG maintains its own records, and responds directly to any requests for access to its records.  The Inspector General is the official custodian for all OIG records and documents, and decisions to release OIG documents are solely within the discretion of the Inspector General.  The Defendant does not have control nor possession of materials related to the OIG investigation referred to in Interrogatory No. 1, and the Defendant cannot, under the Inspector General Act, compel the OIG to provide it with such access.  Consequently, since the Defendant does not have access to the requested records, any such records cannot be produced.

                Respectfully submitted,

                MARY BETH BUCHANAN
                UNITED STATES ATTORNEY

                PAUL E. SKIRTICH
                Assistant U.S. Attorney
                Western District of PA
                700 Grant Street, Suite 4000
                Pittsburgh, PA 15219
                412-894-7418
                PA ID No. 30440

# Deposition of Debora Chiz Novakowski - April 22, 2003
# pp. 45-50

DEBORA NOVAKOWSKI

– – – –

1  in, they go in there and bullcrap with him for about
2  a half hour and he doesn't say anything to them.  So
3  it's just a fall down from that.
4       Barry is a big culprit of being very
5  discriminatory against woman.  And the women in the
6  office make a joke that it's because he's from
7  Virginia.  He's one of the good ol' boys.
8       Q.   Okay, I'm just going to take what you've
9  said and break it down a little bit.  You first
10 spoke of an individual, and you alleged certain
11 instances where he once exposed himself, once was
12 watching a movie, maybe some pictures in a printer,
13 and a picture in the copy room.  With regard to this
14 individual, when was the last of these instances?
15      A.   Probably within the last year, I don't know
16 specific dates.  I didn't mark it down.
17      Q.   Which instance do you think was within the
18 last year?
19      A.   The pictures.  The printing out.
20      Q.   How did these instances by this individual
21 affect the working atmosphere for the women in the
22 office?
23      A.   It makes them very uncomfortable.

DEBORA NOVAKOWSKI

- - - -

1   Q.   In what way?
2   A.   There's people that will not stay at night
3  with him after hours.  If they want to work later
4  and he's there, they will not stay.  They will not
5  stay in the office.  That is affecting their working
6  environment.
7   Q.   And during office hours, what effect is it
8  having on the women in the office?
9   A.   Not as much because there's other people in
10 the office.
11  Q.   When you say "not as much", can you
12 articulate any effect it's having on the female
13 employees during working hours?
14  A.   A lot of them won't really talk to him or --
15 they just feel very uncomfortable around him.
16  Q.   And if they can steer clear to avoid him?
17  A.   They do.
18  Q.   Do his actions in any other way affect the
19 working environment of the females in the --
20  A.   No.
21  Q.   -- in the Erie area OSHA office?
22  A.   No.
23  Q.   How often are employees required to work

DEBORA NOVAKOWSKI

- - - -

1  after hours?
2      A.   Nobody is required.  We are on a flexy (sic)
3  schedule, that you could work from 6 a.m. to 6:30
4  p.m.  So if somebody gets in late, they might stay
5  later to, you know, get their hours in.
6      Q.   The actions of this individual, how have
7  they affected you?
8      A.   Jim hasn't spoken to me in three years,
9  hardly.
10     Q.   And how has that affected your ability to
11 work in the Erie area OSHA office, both within the
12 office and in your job in general?
13     A.   It's very uncomfortable.  I don't like it.
14 Me and Jim had some words of a few -- a while back.
15 And I do not mislike (sic) Jim, I do like him.  I've
16 gone to John with some certain things like the movie
17 and stuff, and I don't think John believes me, I
18 think he's thinks I'm trying to get even with Jim.
19 I am not.
20          I have never done anything to get him in
21 trouble, and I would never, I am the shop steward up
22 there.  Jim has actually made comments about his
23 family and other things, and just other very

DEBORA NOVAKOWSKI

- - -

1 uncomfortable things.  He's a very unhappy person.
2 And he's made some very not so nice comments about
3 his family.
4    Q.   And I'm just going to remind you that we're
5 going to attempt to not use anybody's names.
6    A.   Yes.
7    Q.   How have this person's actions affected you
8 and your working environment specifically?
9           MR. LINKOSKY:  Asked and answered.
10    A.   Yeah, it's very uncomfortable.
11 BY MS. APPEL:
12    Q.   In what specific ways is it uncomfortable?
13    A.   It's just uncomfortable.  It's very, very
14 uncomfortable working in there with -- you don't
15 know if he's going to -- you know, what I mean.
16 Some days he comes in and he's in a good mood, some
17 days he comes in and he doesn't talk to hardly
18 anyone and he's slamming chairs.
19    Q.   Do you think his attitude affects the male
20 employees in your office as well?
21    A.   Absolutely not, they all talk to him and get
22 along great.
23    Q.   Have you ever been unable to perform any of

DEBORA NOVAKOWSKI

- - - -

1  your work duties because of the actions of this
2  individual?
3      A.   No.
4      Q.   You stated that a supervisor in the office,
5  Barry Burbage, makes derogatory comments about women
6  while he's in the office.  Can you tell me
7  specifically what kinds of comments you are
8  referring to?
9      A.   He makes comments a lot to the women up
10 front about how little they make, and that stuff is
11 beneath him doing, you know, as far as filing and
12 doing stuff like that, and numerous people have seen
13 it in the office.
14           She was archiving one day and she is sitting
15 on the floor, she's archiving the cases, and he came
16 in and he dropped a big pile of stuff right next to
17 her and he goes, here, file these.  And archiving is
18 a big project, she's got to get all the case files
19 out, purge them to send them to archive.
20     Q.   Are any of these comments of a sexual
21 nature?
22     A.   No.  I don't -- to my knowledge, what I hear
23 is just, is not -- no.

DEBORA NOVAKOWSKI

- - - -

1  Q. In addition to the employee whose actions we
2  discussed a minute ago, are there any other examples
3  of actions by male employees of a sexual nature in
4  the office?
5  A. No.
6  Q. What involvement do you believe that Barry
7  Burbage had in the selection of the compliance
8  assistant position?
9  A. I do not know.
10 Q. Do you have any personal knowledge of him
11 having any involvement in the selection?
12 A. No.
13 Q. Do you believe that any individual in the
14 Erie area OSHA office violated OSHA's sexual
15 harassment policy?
16          MR. LINKOSKY: Objection. No
17 foundation as to what the policy is.
18 A. I was going to say, I don't have it in front
19 of me. I would have to see it to answer that
20 question specifically because I know it's very
21 large, and it's very all encompassing.
22 BY MR. APPEL:
23 Q. Are there any actions or statements or

# Copy of EEO hearing testimony - May 20, 2003 pp. 63-66

63

1  Q.    No, you would not agree?
2  A.    They were not sexual.
3  Q.    Okay.  So you would agree that they were not
4  sexual in nature?
5  A.    They were not about a sexual --- no.  I don't
6  understand the question.
7  Q.    Were these comments sexual ---?
8                     ATTORNEY LINKOSKY:
9                     Will you please define sexual?
10                    JUDGE POLITO:
11                    Were they about a sexual act, for
12 example?
13 A.    No.  No.
14 BY ATTORNEY APPEL:
15 Q.    The other incidents that you described in the
16 office, pornographic pictures and an incident
17 involving a cleaning person and an incident involving
18 a video.  Are those the only four instances you know
19 of that make you --- aside from anything that happened
20 post-selection, post-non-selection, are there any
21 other incidents --- you don't know of any other
22 incidents --- forget that.
23       Those four incidents that you talked about, they
24 all involved the same person; is that correct?
25 A.    Yes.

64

1  Q.    And if action was taken by the agency in private
2  with regard to this person's actions, you wouldn't
3  know about that; would you?
4  A.    If it was in private, no.
5  Q.    These actions, the four that I just reviewed that
6  you talked about, they do not affect --- they did not
7  affect the working conditions of employment for the
8  female employees; did they?
9  A.    Yes, they did.
10 Q.    Do you remember me asking you that at your
11 deposition?
12 A.    No.
13 Q.    Do you remember me asking you, how did these
14 incidents by this individual affect the working
15 atmosphere for the women in the office?  Do you
16 remember me asking you that?
17 A.    Okay.  Go ahead.  What did I say?
18 Q.    Do you remember telling me that there were some
19 people who maybe felt uncomfortable staying at work at
20 night, but that nobody was required to work at night
21 in your office?  Do you remember that?
22 A.    Yes.
23 Q.    Do you remember me asking you, and during office
24 hours what effect is it having on the women in the
25 office and you answering, not as much because there's

65

1  other people in the office.  And when I said, when you
2  say not as much, can you articulate any effect it's
3  having on the female employees during working hours
4  and do you remember that you couldn't articulate any?
5  A.    Yes.
6  Q.    And when I asked you do his actions, referring to
7  the employee who may or may not have been involved in
8  the four instances we have discussed, do you remember
9  when I asked you do his actions in any other way
10 affect the working environment of the females in the
11 Erie area OSHA office, do you remember that you
12 responded no?
13 A.    If I said yes, yes, I remember.  Yes.
14 Q.    You remember that the answer was no, that his
15 actions did not affect the employees in the Erie area
16 OSHA office?
17                    JUDGE POLITO:
18                    Do you remember that?
19 A.    I don't remember that vividly.
20                    ATTORNEY APPEL:
21                    Your Honor, may I approach.
22                    JUDGE POLITO:
23                    Yes.  Why don't you keep her ---
24 she has her own copy of the deposition.
25 A.    Maybe she didn't want me to have it.

66

|    |    |
|----|----|
| 1  | JUDGE POLITO: |
| 2  | Hand her her copy. |
| 3  | ATTORNEY APPEL: |
| 4  | I have another one. |
| 5  | BY ATTORNEY APPEL: |
| 6  | Q.   Page 46, towards the bottom, line 18, I ask, do |
| 7  | his actions in any other way affect the working |
| 8  | environment of the females in the --- you answered |
| 9  | with no before I finished.  And then I finished with |
| 10 | in the area OSHA office.  And again you answered no. |
| 11 | A.   Yes. |
| 12 | Q.   And on page 48, line 23, do you remember I asked |
| 13 | you, have you ever been unable to perform any of your |
| 14 | work duties because of the actions of this individual, |
| 15 | and you answered, on page 49, line 3, no.  Do you |
| 16 | remember that? |
| 17 | A.   Yes. |
| 18 | Q.   Those pornographic pictures that you discussed, |
| 19 | one in the printer and one maybe found in the trash? |
| 20 | A.   No. |
| 21 | Q.   One crumpled up? |
| 22 | A.   No.  It was found ---. |
| 23 | Q.   One in the printer? |
| 24 | A.   It was found in the copy room --- |
| 25 | Q.   One in the copy room? |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Response to Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents was sent via first-class mail, postage-prepaid, on this 30th day of December, 2005, to the following:

>John R. Linkosky, Esquire
>John Linkosky & Associates
>715 Washington Avenue
>Carnegie, PA 15106

_____
PAUL E. SKIRTICH
Assistant U.S. Attorney