# COPY OF TRANSCRIPT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORA NOVAKOWSKI,              CIVIL ACTION

       Plaintiff,

   vs.

ELAINE CHAO, SECRETARY,
and the UNITED STATES
DEPARTMENT OF LABOR,

     Defendant.              NO. 04-356 ERIE


        Oral deposition of RICHARD
D. SOLTAN, ESQUIRE, taken at the law
offices of U.S. ATTORNEY'S OFFICE,
614 Chestnut Street, Suite 1250,
Philadelphia, Pennsylvania, on
Thursday, February 9, 2006,
commencing at 9:47 a.m., before
Rosemary Locklear, Registered
Professional Reporter, Certified
Shorthand Reporter (NJ), Certified
Realtime Reporter and Notary Public,
pursuant to notice.



## James DeCrescenzo Reporting, LLC
### INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581

EXHIBIT B

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    APPEARANCES:

2    LAW OFFICES OF JOHN LINKOSKY &
         ASSOCIATES
3          JOHN LINKOSKY, ESQUIRE
           715 Washington Avenue
4          Carnegie, Pennsylvania 15106
           (412) 278-1280
5          Appearing on behalf of Plaintiff

6    UNITED STATES ATTORNEY'S OFFICE
           PAUL E. SKIRTICH, ESQUIRE
7          700 Grant Street, Suite 4000
           Pittsburgh, Pennsylvania 15219
8          (412) 894-7418
                   and
9    UNITED STATES DEPARTMENT OF LABOR
           ANDREA J. APPEL, ESQUIRE
10         appel-andrea@dol.gov
           The Curtis Center, Suite 630E
11         170 South Independence Mall West
           Philadelphia, Pennsylvania 19106
12         (215) 861-5125
           Appearing on behalf of Defendants

13

14

15              EXAMINATION INDEX

16   RICHARD D. SOLTAN, ESQUIRE
         BY MR. LINKOSKY                    4

17

18

19

20

21

22

23

24

**JDR**
**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd . 6° Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    Eligibles goes to the area office, I

2    assume; right?  You have to answer

3    yes or no.

4        A.    I'm sorry.  Yes.

5    Absolutely.

6        Q.    And who was responsible at

7    the area office level for making the

8    selection?

9        A.    Selection was made by the

10    area director.

11        Q.    And in this case it's Mr.

12    Stranahan.

13        A.    John Stranahan.

14        Q.    At the area office level

15    who's responsible for enforcing the

16    sexual harassment policy?

17        A.    John Stranahan.

18        Q.    Okay.

19        A.    And the subordinates,

20    subordinate managers, if they get

21    information about an issue that

22    relates to sexual harassment.

23        Q.    Who bears the ultimate

24    responsibility?

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1        A.      In the area office?  The

2   area director does.

3        Q.      And what about your role in

4   enforcing the sexual harassment

5   policy?

6        A.      Those allegations are

7   brought up through the chain of

8   command to me or to my deputy or to

9   the assistant regional administrator

10  for management, whoever is there,

11  whoever is available.

12       Q.      There or available where?

13       A.      In the regional office --

14       Q.      In the regional office.

15       A.      -- at the time an

16  allegation is made.

17       Q.      Does every incident of

18  sexual harassment or sexually hostile

19  atmosphere come to the regional

20  office?

21       A.      It is supposed to.

22       Q.      Okay.  Do you monitor that

23  program in any way to see that you

24  are getting all that information?

James DeCrescenzo Reporting, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

32

1    A.    I don't understand the

2  question.

3    Q.    Okay.  There's a sexual

4  harassment policy.

5    A.    Uh-huh.

6    Q.    And there are

7  responsibilities at the area office

8  level for administering that policy.

9    Do you have -- do you

10  monitor the area offices to make sure

11  that you are being made aware of

12  sexual harassment that might occur,

13  sexually hostile atmosphere that

14  might --

15    A.    I don't go to employee to

16  employee asking if anything has

17  happened that's not been reported to

18  me.  We do have annual training

19  wherein we remind everyone of the

20  policy and the need to comply with

21  it.

22    Q.    Okay.  And when you say you

23  remind everyone, who specifically

24  would that be?

James DeCrescenzo Reporting, LLC

215.564.3905    InnovatingLitigation    FAX  215.751.0581
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

33

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1       A.    We remind all of the

2   managers, and the managers have an

3   obligation also to put out

4   information to the employees.

5       Q.    Do you monitor the managers

6   to make sure that information has

7   gone out?

8       A.    We require each of them to

9   certify that it has gone out.

10      Q.    They certify.

11      A.    Yeah.

12      Q.    Okay.  Do you follow up on

13  the certification?

14      A.    Well, certainly if we don't

15  get one, we do.

16      Q.    Okay.  But if you get one,

17  do you certify that -- do you follow

18  up to see that that certification is

19  in fact true?

20      A.    No.  As I said a moment

21  ago, I don't go to each employee

22  asking whether or not.

23      Q.    How about each area

24  director?  There's ten of those.

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/5/06

1          A.      Yeah, we go to each area

2     director asking them to certify that

3     the information has been given out.

4          Q.      So do I understand

5     correctly if there is a sexually

6     hostile atmosphere that the area

7     director does not, has not or does

8     not deal with, that that area

9     director has certified to you

10    annually --

11         A.      No.  No.  He certifies to

12    me the training has been done.

13              MR. SKIRTICH:  Well,

14    objection.

15              Hang on a second.

16              First of all, we have a

17    compound question so we have to break

18    those down and answer them one by one

19    so we can make sure this record is

20    clear.  So why don't we do that

21    first.

22              You asked more than one

23    question.

24              MR. LINKOSKY:  Would you

James DeCrescenzo Reporting, LLC
InnovatingLitigation
1880 JF K Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1   read it back?  I didn't think I did.

2   You know, I'm old and my memory is

3   short.

4                  MR. SKIRTICH:   That's all

5   right.

6                  (The court reporter read

7   back the following:

8                  "QUESTION:   Do I understand

9   correctly if there is a sexually

10  hostile atmosphere that the area

11  director does not deal with, that

12  that area director has certified to

13  you annually --")

14                 MR. LINKOSKY:   I don't

15  believe that's a compound question,

16  Paul.   This is a simple question.

17                 MR. SKIRTICH:   All right.

18                 MR. LINKOSKY:   Okay.

19  BY MR. LINKOSKY:

20      Q.      And your answer?

21      A.      Boy, I think it's a

22  compound question.   But I do not --

23  let me repeat what I've said.   I

24  don't go from employee to employee

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    asking them whether or not they have

2    any instances of harassment or

3    whether or not they have received the

4    annual notices relating to the policy

5    of the Department.  I do demand of

6    each of the area directors that they

7    circulate those notices and that they

8    certify to me that they have in fact

9    done that.

10        Q.    Do I understand correctly

11   you have received certifications from

12   Mr. Stranahan that he has done that?

13        A.    Over the years, yes.

14             MR. LINKOSKY:  I think that

15   those certifications would have been

16   part of the discovery that I should

17   have had.

18             THE WITNESS:  Well, those

19   certifications aren't necessarily

20   written --

21             MR. SKIRTICH:  Hold on.

22   Hold on.  Hold on a second, please.

23             MR. LINKOSKY:  Didn't I ask

24   for all of the documents relevant to

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitgation        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    the --

2            MR. SKIRTICH: Well, we can

3    deal with that after. You'll have to

4    point out --

5            MR. LINKOSKY: I just want

6    to put on the record that there

7    apparently are documents that I

8    didn't -- I didn't get in this

9    regard.

10            MR. SKIRTICH: Well, first

11    of all --

12            MR. LINKOSKY: That's fine.

13            MR. SKIRTICH: Hang on a

14    second. Hang on a second. Now it's

15    my turn.

16            First of all, that is not

17    my understanding.

18            MR. LINKOSKY: Okay. Fine.

19            MR. SKIRTICH: And if there

20    is a request for documents and we

21    have them, you'll get them. But this

22    is the first time that I have heard

23    of it, to my memory. Okay?

24            THE WITNESS: And let me

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd , 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    also say that the certifications are

2    not necessarily written.  They're

3    certifying to me that they've done

4    it.

5    BY MR. LINKOSKY:

6        Q.    So they're verbal

7    certifications?

8        A.    Uh-huh.  Can be.

9            MR. SKIRTICH:  Is that yes?

10           THE WITNESS:  That's a yes.

11   I'm sorry.

12   BY MR. LINKOSKY:

13       Q.    Do you have a system, a

14   program where you go to your area

15   directors on an annual basis and say,

16   did you do this, did you -- are you

17   certifying that you have done all

18   these things?

19       A.    No.  My recollection is

20   that we send out documents over the

21   course of the year which talk about

22   policies concerning the handicapped,

23   policies concerning sexual

24   harassment, policies concerning equal

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1   opportunity and we say to them, you

2   need to give these to your employees,

3   you need to distribute these to the

4   employees.  And maybe now it might

5   even be done electronically.  It may

6   even be done by E-mail.  I -- I don't

7   recall.  But I ask them to ensure

8   that they have done this.

9        Q.    Correct.  And that's the

10  certification you referred to.

11       A.    Yeah.

12       Q.    Their response.

13       A.    Their response to me, yeah.

14       Q.    Okay.  Now, my question

15  was, do you do that on some

16  systematic basis annually?

17            MR. SKIRTICH:  Well,

18  objection.  I think he did answer.

19            If it's verbal, it could be

20  systematic.

21            MR. LINKOSKY:  Well, what

22  I --

23            MR. SKIRTICH:  You're

24  asking for writing or documents?

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1          MR. LINKOSKY:   No.

2    BY MR. LINKOSKY:

3          Q.    What I'm asking for is, do

4    you have a program where you say

5    every, for example --

6          A.    No.

7          Q.    -- every July, I check to

8    see that this happens?

9          A.    No.

10         Q.    Or how is it done is what I

11   need to --

12         A.    But let me -- let me give

13   you an example of how it's being done

14   this year.

15              We are bringing all of the

16   area directors and all of the

17   assistant area directors into a

18   meeting in Washington, D.C., which is

19   our planning conference, and during

20   that period of time we are going to

21   give them training on all of these

22   issues and make sure they have copies

23   of them again.

24              Now, this is the first time

Case 1:04-cv-00356-SJM    Document 48-3    Filed 06/01/2006    Page 14 of 30

41

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/3/06

1   that I remember having formal

2   training all at once for all of these

3   people about all of these documents.

4   But they come out from the national

5   office at different times.  So we

6   give them out and ask them to tell us

7   that in fact they have given them to

8   their employees.

9       Q.    So I think it's the word

10  "certification" that I'm hung up on

11  because certification -- and see if

12  you disagree with me -- certification

13  to me implies that someone makes an

14  affirmative statement, I have done

15  these things and --

16      A.    I can't disagree with you.

17  I'm sure --

18      Q.    Okay.  Does that happen is

19  what I'm trying to get at?  I mean,

20  we're dancing around this.

21      A.    I asked them, have you --

22          MR. SKIRTICH:  Objection to

23  the use of your word "dancing."

24          MR. LINKOSKY:  That's --

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd . 6ᵗʰ Floor, Philadelphia PA 19103
www.JDReporting.com

215.564.3905                    FAX  215.751.0581

42

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1              MR. SKIRTICH:   Go ahead.

2    You can answer.

3              MR. LINKOSKY:   I'm

4    referring to myself, for the record.

5              MR. SKIRTICH:   All right.

6    All right.

7              THE WITNESS:   I don't dance

8    anyway.   Ask my wife.

9              I make sure and check with

10   them to make sure that in fact they

11   have handed it out to their

12   employees.

13   BY MR. LINKOSKY:

14        Q.     How often?

15        A.     When it happens.

16        Q.     Okay.   So let me see if I

17   understand.   A publication,

18   information goes out to the area

19   office, goes to the area director.

20   You follow up verbally to ask that

21   each area director, each of the ten,

22   including Mr. Stranahan, did you get

23   this, did you do what you're supposed

24   to do?

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1          A.    And that follow-up may be

2     in a personal phone call or it may be

3     on a conference call saying, please

4     make sure that the stuff has gone

5     out.

6          Q.    And it happens every time

7     it goes out; is that correct?

8          A.    It happens every time it

9     goes out. And again, these things go

10    out at different times during the

11    course of a year.

12         Q.    Okay. And has that been

13    the process that you have followed

14    since January of 2000?

15         A.    I believe it is.

16         Q.    Okay. Now, when there is a

17    sexual harassment or sexually hostile

18    atmosphere complaint in the area

19    office or -- well, let's talk about a

20    complaint.

21              What's the responsibility

22    of the area director when he or she

23    gets a complaint of sexual harassment

24    or sexually hostile atmosphere?

JDR

**James DeCrescenzo Reporting**, LLC

215.564.3905                InnovatingLitigation                FAX  215.751.0581
                    1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
                              www.JDReporting.com

44

1      A.      Again, it depends on the

2   time frame.   The very stringent

3   policy that is in effect now started

4   sometime during the administration of

5   Secretary Chao.   And I can't tell you

6   the year that was, 2002, 2003.   But

7   it's a very stringent policy, and

8   that is that if someone knows of

9   something, a manager knows of

10  something, they're to report it up

11  the line and that, in turn, is to be

12  referred to people in Washington who

13  evaluate or it might be referred back

14  to us, but initially referred to

15  Washington to evaluate that claim.

16     Q.      Now, you said the years

17  2002, 2003.

18          What was the policy prior

19  to that, from January of 2000?

20     A.      The years -- the policy

21  prior to that was that sexual

22  harassment wasn't to be tolerated and

23  reports of sexual harassment made to

24  a manager were to be reported up the

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    line.

2          Q.    To whom?

3          A.    Well, it probably would

4    have been to Brenda McLahan.

5          Q.    To the regional office.

6          A.    To the regional office,

7    yes.

8          Q.    And to Miss McLahan and

9    ultimately?

10         A.    Ultimately to me.  Yeah.

11         Q.    Okay.

12         A.    Or whoever was in there --

13   who was the regional administrator at

14   the time.  Yeah.

15         Q.    Okay.  But the time period

16   we're talking about, 2000 to 2002 --

17         A.    It would have been me.

18         Q.    -- it would have been you.

19   Okay.

20               Now, did the area director

21   have any responsibility in regard to

22   sexual harassment, sexually hostile

23   atmosphere to survey, observe, to see

24   whether any of those circumstances

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    are occurring in his or her office?

2        A.    I'm not sure what you mean

3    by survey or observe.  Certainly, if

4    somebody observes something, they

5    have an obligation to bring it

6    forward.

7        Q.    Okay.

8        A.    They're not meant to go out

9    and investigate claims, potential

10   claims, there is no potential claim

11   brought to his or her attention.  So

12   they're not to go through the office

13   at night looking under desks and --

14       Q.    Well, that's what I'm

15   getting at, Mr. Soltan.

16            When it's brought to their

17   attention, obviously, it's brought to

18   the attention of the area director --

19       A.    Uh-huh.

20       Q.    -- when there's a

21   complaint.

22            What I'm talking about is

23   when the area director observes,

24   learns of other than through a

1  complaint sexual harassment or of a

2  sexually hostile atmosphere, what is

3  the obligation of the area director

4  in those circumstances?

5       A.    I imagine the area director

6  would probably counsel the person

7  involved immediately and under the

8  current policy would have to report

9  it up the line.

10      Q.    Okay.  Well, under the

11  prior policy, prior to 2002?

12      A.    I don't fully remember.  I

13  think they probably had a

14  responsibility to deal with it

15  locally but, clearly, if this was

16  something that was ongoing, to report

17  it up the line.

18      Q.    Well, when you say ongoing,

19  do you mean it had to be repeated in

20  order for it to be reported?

21      A.    I imagine the area director

22  would probably try to counsel the

23  person initially to make it stop.

24      Q.    And as far as you were

48

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    concerned, in those circumstances,
2    would you have any knowledge of it at
3    all?
4         A.    I might not.
5         Q.    Was an investigation into
6    the -- into the situation required to
7    be done by the area director?
8         A.    If he got a complaint.
9         Q.    What about if he observes?
10   What if he learns of it, other than a
11   complaint?
12        A.    If he learns of it other
13   than a complaint, certainly, with the
14   current policy he's required to
15   forward that up through the channels
16   to me.
17        Q.    So prior to the current
18   policy, prior to 2002, he wasn't
19   required to investigate such things?
20        A.    No.  I'm sure he was
21   required to investigate such things
22   but I don't recall how that policy
23   was administered prior to the very
24   clear change that happened during the

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1  middle of Secretary Chao's first

2  term.

3      Q.    Do you agree with me that

4  from your testimony, it appears that

5  sexual harassment, sexually hostile

6  atmosphere could exist in any one of

7  your area offices, Erie included,

8  from 2000 to 2002 and you would have

9  absolutely no knowledge of it?

10          MR. SKIRTICH:   I object.

11          It calls for speculation

12  because it's something --

13          MR. LINKOSKY:   You can

14  answer.

15          MR. SKIRTICH:   -- that's

16  not in existence.  Go ahead.  Fact

17  not in existence.

18          But go ahead.  You can

19  answer it.

20          THE WITNESS:   No, I don't

21  agree with it.  I think that -- that

22  issues of sexual harassment would be

23  raised to my attention.  I think that

24  each of the area directors would have

50

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    been sensitive to raise these to my

2    level if they knew about them through

3    a complaint or through personal

4    experience.

5    BY MR. LINKOSKY:

6        Q.    Can you be sure?

7        A.    Well, once again, it's -- I

8    manage 190 people across the region

9    and it's difficult to be sure about

10   most things.

11       Q.    I'm talking about your 10

12   area directors, not the other 180

13   people.   I'm talking about their

14   responsibility.

15            Do I understand correctly

16   that there could have been from 2000

17   to 2002, since there was no stringent

18   reporting, as you've testified, that

19   there could have been a sexually

20   hostile atmosphere, sexual harassment

21   occurred in an area office and you

22   would have been totally unaware of

23   it?

24            MR. SKIRTICH:   I object to



ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1     the question again because counsel is

2     now characterizing the witness's

3     testimony as to what is stringent and

4     not stringent and we didn't get into

5     that definition.

6            But go ahead.  You can

7     answer.

8            MR. LINKOSKY:  You can

9     answer the question.

10           THE WITNESS:  Is it

11     possible that something happened?

12           MR. LINKOSKY:  Sure.

13           THE WITNESS:  I'm sure that

14     anything is possible.

15     BY MR. LINKOSKY:

16       Q.  Yes or no.  Could it --

17     could it happen or not?

18           MR. SKIRTICH:  Objection.

19           THE WITNESS:  It's --

20           MR. SKIRTICH:  I think he

21     answered.  He said it's possible it

22     could happen, Counsel.

23           MR. LINKOSKY:  I thought

24     the answer was not -- was not

James DeCrescenzo Reporting, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                FAX 215.751.0581

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    definitive.

2            MR.  SKIRTICH:  Said it

3    could happen.

4            MR.  LINKOSKY:  It could

5    happen.

6            MR.  SKIRTICH:  It's

7    possible.  It's possible.

8    BY MR. LINKOSKY:

9        Q.    As part of the

10    investigation -- was there an

11    investigation procedure that was

12    conveyed to the area directors when

13    they became aware of sexual

14    harassment, sexually hostile

15    atmosphere?

16            MR.  SKIRTICH:  Now, I think

17    it's important when, time frame.

18            MR.  LINKOSKY:  2000 to

19    2002.

20            MR.  SKIRTICH:  All right.

21            THE WITNESS:  I'm sorry.

22    Could I have the question again?

23    BY MR. LINKOSKY:

24        Q.    During the years 2000 to

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    2002, before the current policy went

2    into effect, was there an

3    investigation procedure that area

4    directors were to follow when they

5    became aware of a sexual harassment

6    or a sexually hostile atmosphere in

7    their office?

8        A.    It is my recollection that

9    they were to report those to -- up

10   the chain of command and the chain of

11   command would then do the appropriate

12   investigation.

13       Q.    Okay.

14       A.    That's my recollection.

15   But again, this is the

16   responsibility -- day-to-day

17   activities like that were done by the

18   assistant regional administrator for

19   administration to management.

20       Q.    Were you aware of a --

21   strike that.

22            Was there a -- an

23   investigation process to be followed

24   by whomever did it?

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

54

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1              MR. SKIRTICH:  Well,

2    objection.

3              I think he did answer that.

4    He said that the region would then do

5    an investigation.

6              MR. LINKOSKY:  Right.  I

7    want to know what the process was.

8              MR. SKIRTICH:  Okay.

9              MR. LINKOSKY:  I'm not

10   going to --

11             MR. SKIRTICH:  I thought

12   you asked, is there?

13             MR. LINKOSKY:  What I'm

14   anticipating is your objection if I

15   jumped ahead without that question is

16   what's happened here.

17             MR. SKIRTICH:  If there's a

18   process, I think that's what counsel

19   wants.

20             THE WITNESS:  I'm not aware

21   of a manual or a written process or

22   procedure that had to be followed.

23   I'm aware that the complaint has to

24   be investigated.

James DeCrescenzo Reporting, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1              MR. LINKOSKY:  Okay.

2    BY MR. LINKOSKY:

3         Q.    Are you aware of a

4    question -- of a requirement -- of a

5    requirement that the complainant be

6    questioned in detail about the

7    allegations if there's a complaint?

8         A.    I, again, I'm not aware of

9    a requirement or a process.

10        Q.    Who has the authority to

11   take corrective action when there is

12   a -- an area director becomes aware

13   of a sexual harassment -- of sexual

14   harassment or a sexually hostile

15   atmosphere?

16        A.    Well, the area director

17   does.

18        Q.    Okay.

19        A.    He can.

20        Q.    Do those corrective actions

21   have to be cleared through the

22   regional office first?

23        A.    I do not know when it comes

24   to the time frame you're dealing

JDR

James DeCrescenzo Reporting, LLC
InnovatingLitigation
1880 JFK Blvd , 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

56

1    with.    I do know that at this point,

2    in light of the stringency of the

3    policy, it has to be reported

4    directly up the -- up the chain of

5    command, that the regional office

6    would know what's happening because

7    it would be -- it would be processed

8    through the regional office up to the

9    national office.

10          Q.    From year 2000 to 2002.

11          A.    That I can't recall.    I

12   don't remember.    I just don't

13   remember.

14          Q.    Are there any limitations

15   on what an area director can do to

16   correct a situation of sexual

17   harassment or sexually hostile

18   atmosphere?

19          A.    Well, that's a pretty broad

20   question.    We -- you know, sure,

21   there are limitations.    The contract

22   limits what he can do or she can do.

23   There are -- the grievance -- the

24   disciplinary process in the

James DeCrescenzo Reporting, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF RICHARD D. SOLTAN, ESQUIRE, 2/9/06

1    Department of Labor is pretty

2    circumscribed at what can be done and

3    that process and it's governed by the

4    contract, unless it's a criminal

5    activity, then it's referred out for

6    prosecution.

7         Q.    Okay.    Okay.    Now, there

8    has been an investigation by the

9    Office of Inspector General of the

10   Department of Labor into events in

11   the Erie area office that might

12   involve or involve a sexually hostile

13   atmosphere and sexual harassment;

14   correct?

15        MR. SKIRTICH:    Objection to

16   the term, the characterization of

17   what is sexual harassment.    You're

18   using terms that are not defined and

19   they are legal terms.

20        MR. LINKOSKY:    Okay.    Okay.

21   BY MR. LINKOSKY:

22        Q.    Has there been an

23   investigation by the Office of the

24   Inspector General within the last two

James DeCrescenzo Reporting, LLC
innovatingLitigation
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                    FAX  215.751.0581